UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JAMAL SALAAM BEY,  :
               Plaintiff,  :
                                                :    **OPINION AND ORDER**
v.  :
                                                :    16 CV 3807 (VB)
THOMAS GRIFFIN, SUSAN HANN, SCOTT  :
TURRIGLIO, AMANDA SAUNDERS,  :
REGINALD LORDEGRAY, TEISHA  :
JOHNSON, and WARREN FREEMAN,  :
               Defendants.  :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiff Jamal Salaam Bey, proceeding pro se and in forma pauperis, brings this action under 42 U.S.C. § 1983, alleging Thomas Griffin ("Supt. Griffin"), Susan Hann ("Lt. Hann"), Scott Turriglio ("Sgt. Turriglio"), and correction officers ("C.O.") Amanda Saunders, Reginald Lordegray, Tiesha Johnson, and Warren Freeman, employees of the New York State Department of Corrections and Community Supervision ("DOCCS"), violated his constitutional rights during his incarceration at Green Haven Correctional Facility ("Green Haven").

      Now pending is defendants' motion to dismiss the second amended complaint ("SAC") pursuant to Rule 12(b)(6). (Doc. #48).

      For the reasons set forth below, defendants' motion is GRANTED.

      The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

## BACKGROUND

      For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations in the SAC as true and draws all reasonable inferences in plaintiff's favor.[1]

---

[1]     In addition to the SAC, the Court has reviewed and considered plaintiff's complaint (Doc. #1), amended complaint (Doc. #8), and opposition to defendants' motion to dismiss. (Doc. #53).

1

At all times relevant to the SAC, plaintiff was an inmate at Green Haven.

On April 20, 2016, plaintiff alleges he was stopped for a random pat frisk administered by Sgt. Turriglio and C.O.s Lordegray and Freeman.[2] During the pat frisk, plaintiff was held against a wall and searched, including up and down his legs, in his buttocks, and in his groin area. Plaintiff was also ordered to take off his clothes. According to plaintiff, when he objected, one of the frisking officers threatened to punch him in the face if he did not comply. While searching plaintiff for contraband, C.O. Lordegray allegedly confiscated plaintiff's mail, including "private legal documents" with his family's address. (SAC at 9).

Plaintiff alleges that following the April 20 pat frisk he was placed on thirty days keep lock[3] without a hearing, pursuant to "false ticket" charges. (SAC at 4; Opp'n at 3). The Misbehavior Report indicates that after the pat frisk plaintiff was cited for creating a disturbance, non-compliance with frisk procedures, harassment of an employee, and refusal to obey a direct order. Plaintiff eventually did receive a hearing regarding these charges, however he claims it "was illegal." (SAC at 2). Specifically, plaintiff alleges C.O. Lordegray and Sgt. Torriglio did not appear at the hearing as witnesses.

---

[2] When setting forth allegations about the pat frisk in his SAC and opposition brief, plaintiff vacillates between stating that it occurred on March 18, 2016, and April 20, 2016. (Compare SAC at 2 with Opp'n at 1, 5). Plaintiff's allegations are consistent that the pat frisk occurred around 8:30 p.m., was conducted by C.O. Lordegray, attended in some way by Sgt. Turriglio, was invasive, and resulted in the confiscation of plaintiff's mail. (Compare SAC at 9 with Opp'n at 1, 4). Plaintiff's opposition brief seems conclusive that the pat frisk occurred on April 20, 2016 (Opp'n at 1), and an inmate misbehavior report (the "Misbehavior Report") submitted with plaintiff's opposition brief indicates C.O. Lordegray performed an April 20, 2016, pat frisk to which Sgt. Turriglio was a witness. Accordingly, the Court is satisfied that plaintiff complains of a pat frisk that occurred on April 20, 2016.

[3] Keeplock is "a form of administrative segregation in which the inmate is confined to his cell, deprived of participation in normal prison routine, and denied contact with other inmates." Gittens v. LeFevre, 891 F.2d 38, 39 (2d Cir. 1989).

2

Plaintiff claims "the search was in retaliation from the incident on March 18, 2016." (Opp'n at 3). It is not entirely clear to the Court what occurred on March 18, 2016. Plaintiff states on March 18, 2016, a "female sergeant supervisor" summoned him to her office "to be seen by doctors to investigate [his] private area," after which he was placed under investigation. (Id. at 5). Plaintiff's complaint makes no allegation as to why the sergeant initiated the examination, or why it prompted further investigation.

Plaintiff makes additional allegations regarding retaliation, stating that "the officers are retaliati[ng] for the sexual abuse harassment grievance." (Opp'n at 3). It appears the grievance was about occurrences plaintiff says he could clearly hear, taking place "behind [his] cell" and "under the bed" where it is possible to "hide behind the wall." (Id. at 3). Although plaintiff does not say as much, his claims regarding the sexual harassment grievance seem related to a June 16, 2016, document appended to plaintiff's complaint. The document states: "this complaint has been forwarded to correctional staff . . . in grievance." (SAC at 10). The document alleges: "they are having sexual interc[o]urse under my bed or behind the company in S.H.U. every day." (Id.). The document further states plaintiff has been "blackmailed," "threatened," and "disciplined" for his "complaints for the incident every day since [he was placed] in special housing." (Id.)

Although C.O. Johnson was named as a defendant in the SAC, plaintiff's claims against her are set forth only in his opposition brief. Plaintiff alleges on May 17, 2016, another inmate on plaintiff's block made a remark about C.O. Johnson's sexual preferences, which C.O. Johnson overheard and attributed to plaintiff in a "set up." (Opp'n at 2, 7). In response, plaintiff claims he was escorted to the special housing unit (the "S.H.U."), and "jack[ed] up on the wall" by

3

approximately five unnamed C.O.s, who beat him with sticks while he was handcuffed. (Opp'n at 2).

Plaintiff also alleges he "wrote to" Supt. Griffin "while on investigat[ion]." (SAC at 5).

**DISCUSSION**

I. Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

The Court must liberally construe submissions of pro se litigants, and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation and citation omitted). "Even in a pro se

case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation and citation omitted). Nor may the Court "invent factual allegations" plaintiff has not pleaded. Id.

II.     The April 20 Pat Frisk

The Court liberally construes plaintiff's allegations regarding the April 20, 2016, pat frisk to assert claims of (i) sexual abuse in violation of the Eighth Amendment; (ii) verbal harassment; (iii) First Amendment retaliation; and (iv) interference with legal mail in violation of the First and Fourteenth Amendments.

Defendants argue plaintiff fails to state a claim.

For the reasons set forth below, the Court agrees.

A.      Sexual Abuse in Violation of the Eighth Amendment

Plaintiff characterizes the April 20 pat frisk as "random sexual abuse," and states that C.O. Lordegray's hands were "in his pants." (SAC at 9). Plaintiff claims that during the pat frisk, either C.O. Freeman or Lordegray felt him "up in down" and touched his "private parts." (Opp'n at 5). Plaintiff states Sgt. Turriglio was "right there" helping C.O.s Lordegray and Freeman to hold plaintiff stationary. (Opp'n at 1).

"A corrections officer's intentional contact with an inmate's genitalia or other intimate area, which serves no penological purpose and is undertaken with the intent to gratify the officer's sexual desire or humiliate the inmate, violates the Eighth Amendment." Crawford v. Cuomo, 796 F.3d 252, 257 (2d Cir. 2015). However, "[e]ven an officer who is meticulous in conducting a search does not violate an inmate's constitutional rights as long as the officer had no intention of humiliating the inmate or deriving sexual arousal or gratification from the

5

contact. But a search may not be undertaken maliciously or for the purposes of sexually abusing an inmate." Id. at 258.

Here, plaintiff refers to the pat frisk as "[r]andom" (SAC at 2), and alleges the C.O.s were "checking [] for contraband" (SAC at 9). Plaintiff has not alleged any facts to suggest the pat frisk was conducted with the intention of humiliating him, for the sexual gratification of the C.O.s, or for a malicious purpose. Uncomfortable as the pat frisk may have been, plaintiff's allegations are insufficient to state a claim. See, e.g, Perez v. Ponte, 236 F. Supp. 3d 590, 619 (E.D.N.Y. 2017) ("Plaintiff's claim of sexual assault fails since the Complaint lacks any facts indicating [the Officer] intended to humiliate Plaintiff or otherwise derived sexual arousal or gratification from the search itself.").

Accordingly, plaintiff's Eighth Amendment claim regarding the April 20, 2016, pat frisk is dismissed.

B. Verbal Harassment

Plaintiff claims during the pat frisk C.O. Freeman told him not to move, or he would "beat him up" (Opp'n at 1), and either C.O. Freeman or C.O. Lordegray threatened to punch plaintiff if he did not remove his clothes.

To the extent defendants' conduct can be characterized as verbal harassment, "[v]erbal harassment or profanity alone, unaccompanied by any injury, no matter how inappropriate, unprofessional, or reprehensible it might seem, does not constitute the violation of any federally protected right and is therefore not actionable." Myers v. City of N.Y., 2012 WL 3776707, at *9

(S.D.N.Y. Aug. 29, 2012) (alteration omitted) (internal quotation omitted); see also Cole v. Fischer, 379 F. App'x 40, 43 (2d Cir. 2010) (summary order).[4]

Plaintiff does not claim any injury resulted from the threats, for example, that he was punched, or forced to remove his clothes.

Accordingly, plaintiff's verbal harassment claim does not arise to a constitutional violation, and is dismissed.

### C. First Amendment Retaliation

Plaintiff seems to allege Sgt. Turriglio, and C.O.s Lordegray and Freeman, conducted a sexually abusive pat frisk as retaliation, although it is not entirely clear why plaintiff would be the subject of retaliation. Construing the complaint liberally, plaintiff either alleges he was retaliated against because of an investigation into a prior incident somehow related to his "private area" (Opp'n at 3, 5), or because he filed grievances about sexual abuse (Opp'n at 3), the only specific example of which concerns sexual misconduct occurring behind his cell or under his bed. (SAC at 10).

In either event, plaintiff fails to state a claim.

To "sustain a First Amendment retaliation claim, a prisoner must demonstrate the following: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation omitted). In view of "the ease with which claims of retaliation may be fabricated," courts "examine prisoners' claims of retaliation with skepticism and particular care."

---

4    Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Johnson v. Eggersdorf, 8 F. App'x 140, 144 (2d Cir. 2001) (summary order). Thus, "a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." Friedl v. City of N.Y., 210 F.3d 79, 85–86 (2d Cir. 2000).

The First Amendment protects inmates from retaliation for filing prison grievances. See Gill v. Pidlypchak, 389 F.3d at 384 ("[The plaintiff] has sufficiently alleged (1) participation in protected activity: the use of the prison grievance system."). Accordingly, plaintiff's allegation that he filed grievances regarding sexual abuse satisfies the first prong of the inquiry.

Plaintiff's allegations regarding the pat frisk, however, are insufficient to satisfy the second prong of the inquiry, as "[o]nly retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation omitted). Retaliatory acts that fail to meet this standard are "simply de minimis and therefore outside the ambit of constitutional protection." Id.

"Pat frisks are an ordinary part of prison life and would not (and do not) deter the average inmate from continuing to exercise his First Amendment rights." Henry v. Annetts, 2010 WL 3220332, at *2 (S.D.N.Y. July 22, 2010). Accordingly, plaintiff's allegations regarding the pat frisk do not constitute an adverse action for purposes of a First Amendment retaliation claim.

Moreover, plaintiff fails to allege any facts to support a finding that C.O.s Lordegray and Freeman, and Sgt. Turriglio were personally motivated to retaliate against him, based on either the prior investigation or a sexual misconduct grievance to which they have no apparent connection.[5] The complaint is devoid of allegations that would give rise to an inference of

---

[5] Although plaintiff references "sexual abuse grievances" (Opp'n at 3), he makes no specific allegations regarding who he grieved against or when. There is a single "grievance"

8

retaliation, for example a statement as to which officers were investigated after the female sergeant summoned plaintiff for examination, or comments by the defendants linking the pat frisk to the investigation that took place after the female sergeant summoned plaintiff for examination. Thus, plaintiff fails to allege a causal connection between his protected speech and any retaliatory conduct. See, e.g., Roseboro v. Gillespie, 791 F. Supp. 2d 353, 369 (S.D.N.Y. 2011) (dismissing First Amendment retaliation claim where plaintiff "failed to provide any basis to believe that [defendant] retaliated for a grievance that she was not personally named in.").

The Court does not take lightly plaintiff's allegations that he was retaliated against for complaining of sexual abuse or harassment, but plaintiff has not alleged facts sufficient to state a claim.[6]

Accordingly, plaintiff's First Amendment retaliation claim is dismissed.

D. Interference with Legal Mail

Plaintiff alleges during the pat frisk, C.O. Lordegray confiscated "private legal documents that [were] mail[ed]." (SAC at 9).

Defendants do not address this allegation, but to the extent plaintiff seeks to assert a claim for interference with legal mail, his allegations do not rise to the level of a constitutional violation.

"Interference with legal mail implicates a prison inmate's rights to access to the courts and free speech as guaranteed by the First and Fourteenth Amendments." Davis v. Goord, 320

---

appended to plaintiff's opposition brief, but it post-dates the April 20, 2016 pat frisk, and thus cannot be the basis for any alleged retaliatory animus.

[6] Likewise, plaintiff's allegations that he has been "blackmailed," "threatened," and "disciplined" for his "complaints for the incident every day since [he was placed] in special housing," are too conclusory to state a claim. (SAC at 10). Plaintiff fails to make any specific allegations regarding his "complaints," such as when or to whom they were made. Plaintiff also fails to make any specific allegations regarding who retaliated against him or how.

9

F.3d 346, 351 (2d Cir. 2003). To state a claim for denial of access to the courts, "a plaintiff must allege that the defendant took or was responsible for actions that hindered [a plaintiff's] efforts to pursue a legal claim." Davis v. Goord, 320 F.3d at 351 (internal quotation omitted). To state a First Amendment claim based on interference with the free flow of incoming and outgoing mail, an inmate must show that prison officials "regularly and unjustifiably interfered with the incoming legal mail." Id. at 351.

Plaintiff's allegations are insufficient to state a claim for denial of access to the courts, because plaintiff does not allege the confiscation of his legal documents hindered his ability to pursue a legal claim, or in any way prejudiced him in a legal action. Likewise, plaintiff's allegations are insufficient to state a claim for a violation of his right to send and receive legal mail, because plaintiff states only a single instance of interference with his legal mail, rather than an ongoing practice of interference. See, e.g., Shepherd v. Fisher, 2017 WL 666213, at *38 (S.D.N.Y. Feb. 16, 2017) ("Because Plaintiff's claim relates to only one instance of interference with his mail . . . any allegations that officials tampered with his mail in violation of his constitutional right to the free flow of incoming and outgoing mail are unavailing.").

Accordingly, plaintiff's claim regarding interference with his legal mail does not rise to the level of a constitutional violation, and is dismissed.

III. Disciplinary Measures Following the Pat Frisk

The Court liberally construes plaintiff's allegation that following the April 20, 2016, pat frisk he was placed on thirty days of keep lock confinement prior to an "illegal hearing" based on "false ticket" charges, as a Fourteenth Amendment due process claim.[7]

---

[7] Plaintiff characterizes his keep lock confinement as "illegal against [the] 8th [Amendment]." (SAC at 4). However, for his claim to implicate the Eighth Amendment, plaintiff would have to "demonstrate that the conditions of his confinement result[ed] in

10

Defendants argue plaintiff fails to state a constitutional violation.

The Court agrees.

A.   Keep Lock

Plaintiff fails to state a claim regarding his thirty-day keep lock confinement.

To establish a violation of due process rights, a plaintiff must show "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001). "A prisoner's liberty interest is implicated by prison discipline, such as SHU confinement, only if the discipline imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004) (internal quotation omitted). Although there is no bright-line rule for establishing when keep lock confinement rises to the level of a constitutional violation, courts consider both the duration and conditions of confinement. See Palmer v. Richards, 364 at 64 ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical") (internal quotation omitted).

In assessing the duration prong of the analysis, "restrictive confinements of less than 101 days do not generally raise a liberty interest warranting due process protection, and thus require proof of conditions more onerous than usual." Davis v. Barrett, 576 F.3d 129, 133 (2d Cir. 2009). Plaintiff alleges he was confined for thirty days, and does not state the conditions of his cell were more onerous or severe than usual during his confinement. Plaintiff's allegations thus are insufficient to state a due process claim. See, e.g, Zappulla v. Fischer, 2013 WL 1387033, at

---

unquestioned and serious deprivations of basic human needs." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (internal quotation omitted). Plaintiff makes no such allegations.

*7-8 (S.D.N.Y. Apr. 5, 2013) (finding plaintiff's allegations that he was confined to keep lock for thirty-one days, with atypically harsh conditions, insufficient to state a due process claim).

Accordingly, plaintiff's due process claim regarding his keep lock confinement is dismissed.

B.  Disciplinary Hearing

Plaintiff also claims the disciplinary hearing following his keep lock confinement was "illegal." (SAC at 2).

Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'" Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)).

As set forth above, plaintiff's pre-hearing keep lock did not constitute an "atypical and significant hardship," and plaintiff makes no allegations regarding post-hearing discipline.

Accordingly, plaintiff's claim regarding his disciplinary hearing does not concern a liberty interest implicating his due process rights, and is dismissed.

C.  False Charges in the Misbehavior Report

Plaintiff claims he was issued a "false ticket" (SAC at 2), and was held in keep lock based on "false ticket charges." (Opp'n at 3). The Court assumes plaintiff is referring to the Misbehavior Report issued by C.O. Lordegray on April 20, 2016.

"[I]t is well settled that a 'prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest.'" Williams v. Dubray, 557 F. App'x 84, 87 (2d Cir. 2014) (summary order) (quoting Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986)). Rather, "the inmate

12

must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights." Id.

As discussed above, plaintiff fails plausibly to allege a due process violation, and has given the Court no basis to find the Misbehavior Report issued in connection with the April 20, 2016, pat frisk was retaliatory.

Accordingly, plaintiff's claim that the Misbehavior Report included false charges is insufficient to state a due process violation, and is dismissed.

IV.  Sexual Misconduct in S.H.U.

Appended to the SAC is a document identified as a "complaint . . . forwarded . . . in grievance" of "harassment regarding sexual misconduct." (SAC at 10). The document alleges: "they are having sexual interc[o]urse under my bed or behind the company in S.H.U. every day since I have been in this cell." (Id.) The grievance specifically references Officer Saunders, and further states: "they are moving the bed up and down." Plaintiff alleges he is stressed and unable to sleep because of this conduct. (Id.)

The Court liberally construes plaintiff's allegations to assert another Eighth Amendment sexual abuse claim.

Defendants argue plaintiff fails to state a claim.

The Court agrees.

"Sexual abuse of a prisoner by a corrections officer may in some circumstances violate the prisoner's right to be free from cruel and unusual punishment." Boddie v. Schnieder, 105 F.3d 857, 860–61 (2d Cir. 1997). In this Circuit, however, courts have declined to find sexual abuse claims actionable in the absence of alleged physical contact or egregious sexual conduct.

13

See, e.g., Holland v. City of New York, 197 F. Supp. 3d 529, 547 (S.D.N.Y. 2016) (collecting cases).

Plaintiff's grievance does not allege physical conduct. Further, plaintiff's claim that sexual misconduct takes place in proximity to his cell on a daily basis is insufficiently plausible to state a claim of egregious sexual conduct.

Accordingly, plaintiff's Eighth Amendment sexual abuse claim regarding sexual misconduct in the S.H.U. is dismissed.

V.     Claims First Asserted in Plaintiff's Opposition Brief

Plaintiff's opposition brief asserts claims against C.O. Johnson, and alleges that following an interaction with C.O. Johnson on May 17, 2016, plaintiff was beaten by multiple unnamed officers while en route to the S.H.U. (Opp'n at 2). Plaintiff did not raise these allegations, or state facts remotely resembling these allegations, in the SAC.

Defendants argue the Court should not consider claims raised for the first time in plaintiff's motion papers.

In general, matters outside the pleadings should not be considered "in deciding a motion to dismiss the complaint for failure to state a claim." Nakahata v. New York-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 202 (2d Cir. 2013). Because plaintiff is proceeding pro se, "it is appropriate . . . to consider factual allegations made in [his] opposition papers, so long as the allegations are consistent with the complaint." Kelley v. Universal Music Grp., 2016 WL 5720766, at *6 (S.D.N.Y. Sept. 29, 2016). In analyzing the legal sufficiency of plaintiff's claims regarding the April 20, 2016, pat frisk, and the disciplinary proceedings that followed, the Court has done just that.

However, plaintiff's claims regarding C.O. Johnson and the alleged physical abuse plaintiff was subjected to when he was escorted to the S.H.U. are unrelated to the factual

allegations in the SAC. Accordingly, they will not be considered. See, e.g., Mira v. Argus Media, 2017 WL 1184302, at *3 (S.D.N.Y. Mar. 29, 2017).

VI. Superintendent Griffin

Plaintiff alleges he "wrote to the Superinten[t] Thomas Griffin while on investigat[ion]." (SAC at 5).

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation omitted).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

Plaintiff's bare allegation that he wrote to Supt. Griffin is insufficient to establish his personal involvement in any alleged constitutional violation.

Accordingly, plaintiff's claim against Supt. Griffin is dismissed.

VII. Leave to Amend

The Court should freely grant leave to amend a complaint "when justice so requires." Fed. R. Civ. P. 15(a). Moreover, when a pro se plaintiff fails to state a cause of action, the Court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted).

Here, plaintiff has been given ample opportunity to defend his complaint or show he has a valid claim. On May 31, 2016, after plaintiff's case was transferred from the Eastern District of New York, plaintiff filed an amended complaint in this district. (Doc. #8). By Order dated July 25, 2016, the Court ordered plaintiff to file a second amended complaint to add the identity of two John Doe defendants. (Doc. #14). Without receiving the identity of the John Doe defendants, plaintiff filed a second amended complaint on August 9, 2016, naming several additional defendants. (Doc. #15). By Order dated August 12, 2016, the Court ordered plaintiff to wait to receive the identity of the John Doe defendants, and file a third amended complaint. (Doc. #17). Plaintiff never did so.

Moreover, reading the complaint liberally, the Court does not find any allegations that suggest plaintiff has a valid claim he has merely "inadequately or inartfully pleaded" and therefore should be "given a chance to reframe." Cuoco v. Moritsugu, 222 F.3d at 112. On the contrary, the Court finds that repleading would be futile, because the problems with plaintiff's complaint are substantive, and supplementary and/or improved pleading will not cure its deficiencies. See id.

Accordingly, the Court declines to grant plaintiff further leave to amend.

## CONCLUSION

Defendants' motion to dismiss the second amended complaint is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #48) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated: December 1, 2017
       White Plains, NY

                        SO ORDERED:

                        _____
                        Vincent L. Briccetti
                        United States District Judge